UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD BROWN,

        Petitioner,

                                        Case No. 5:05-cv-166

v.                                          Hon. Janet T. Neff

KURT JONES,

        Respondent.

_____/

**REPORT AND RECOMMENDATION**

Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**I.      Background**

On March 4, 1999, a jury convicted petitioner of second-degree murder, M.C.L. § 750.317 and possession of a firearm during the commission of a felony, M.C.L. § 750.227b. *People v. Richard L. Brown*, No. 219898 (Mich. App. Nov. 6, 2001). He was sentenced as a second habitual offender, M.C.L. § 769.10, to an enhanced term of 12 to 25 years imprisonment for the second degree murder conviction and a consecutive two-year term for the felony-firearm conviction. *Id.* Petitioner's convictions arose from the shooting death of his cousin, Dwight Jeter. It is undisputed that at the time of the shooting, petitioner was confined to a wheelchair, both of his legs having been amputated at the waist. Petitioner admitted that he shot the victim, but claimed that he acted in self defense.

Petitioner presented the following nine issues in his direct appeal to the Michigan

Court of Appeals:

     I.     Did the trial court commit reversible error when it inquired of defense counsel whether [petitioner] was waiving his right to remain silent?

     II.     Did the trial court err when it failed to sua sponte instruct the jury that [petitioner] had no duty to retreat in his own home?

     III.     Did the trial court err when it foreclosed the possibility that trial testimony could be reviewed by the jury?

     IV.     Did the trial court err when it refused to instruct with respect to CJI 2d 11.26, reckless or wanton use of a firearm?

     V.     Was [petitioner] denied effective assistance of counsel?

     VI.     Did the trial court err when it allowed the prosecution to inquire into [petitioner] having been shot?

     VII.     Did the prosecution commit reversible error when it appealed to the jury's civic duty to convict?

     VIII.     Did [petitioner's] sentence violate the doctrine of proportionality?

     IX.     Did the trial court's voir dire instructions with respect to [petitioner's] handicap constitute reversible error?

*See* Amended Brief on Appeal (docket no. 21).  The Michigan Court of Appeals affirmed the conviction.  *People v. Richard L. Brown*, No. 219898.

Petitioner raised the same nine issues in his application for leave to appeal to the Michigan Supreme Court.  *See* docket no. 22.  The Michigan Supreme Court denied petitioner's application.  *People v. Richard L. Brown*, No. 120455 (Mich. Dec. 10, 2002).

On or about November 20, 2003, petitioner filed a motion for relief from judgment pursuant to MCR 6.508, raising the following seven claims:

     I.     The trial court erred when it failed to sua sponte instruct the jury that [petitioner] did not have a duty to retreat in his own home thereby

2

violating due process and the 5th, 6th and 14th Amendments.

II.     [Petitioner's] trial counsel was ineffective for failing to (1) interview and call witnesses, (2) cross examine witnesses, (3) introduce evidence; thereby, violating [petitioner's] 6th Amendment right to effective assistance of counsel.

III.    [Petitioner] was denied effective assistance of appellate counsel, thereby, violating his 14th Amendment right to due process and 6th Amendment right to effective assistance of counsel.

IV.     The court's denial of the jury an opportunity to review the trial transcript was an abuse of discretion and violated [petitioner's] 6th Amendment right to a fair trial.

V.      The prosecutor's "civic duty" argument and argument of facts not on the record denied [petitioner] a fair trial, violating his 14th Amendment rights.

VI.     The trial court violated [petitioner's] due process rights when it instructed the jury not to consider his handicap.

VII.    [Petitioner] was denied due process when the court's incorrect application of the guidelines violated the doctrine of proportionality.

Motion for relief from judgment (docket no. 2).

The trial court denied the motion.  *See People v. Richard L. Brown*, Third Cir. Ct. , Crim. Div., No. 98-9284 (Opinion April 19, 2004) (docket no. 23).  Petitioner raised these seven issues in a delayed application for leave to appeal to the Michigan Court of Appeals, which that court denied "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *See* docket no. 23; *People v. Richard L. Brown*, No. 258733 (April 7, 2005).  Petitioner also raised these issues in his application for leave to appeal to the Michigan Supreme Court, which that court denied because petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *See* docket no. 23; *People v. Richard L. Brown*, No. 128761 (Oct. 31, 2005).

Petitioner has raised the following eight grounds for habeas relief:

I.  Petitioner was convicted using an incorrect jury instruction that did not reflect the law, thereby violating his 5th [Amendment] rights. His 6th [Amendment] right to due process was violated when those instructions foreclosed a part of his defense, and his 14th [Amendment] rights [were] violated when, as a result of the instruction, the state was not required to prove every element of the offense. Petitioner was within the curtilage of his home according to the definition established in the Michigan Supreme Court. His defense was self-defense in a second degree murder trial, and because he was in his home, the no duty to retreat instruction should have been given. Instead, the instruction that the petitioner had a duty to retreat was repeatedly given to the jury.

II. Petitioner's 6th [Amendment] right to effective assistance of counsel was denied when trial counsel neglected to interview or call any of the witnesses who would have supported the petitioner's claims. He also neglected to introduce evidence he had that would have supported [petitioner's] testimony on key issues, therefore, leaving it up to the jury to make key decisions of credibility without the aid of that evidence. He then failed to cross-examine prosecution witnesses whose testimony conflicted with the petitioner's and physical evidence. His trial came down to a question of credibility between the prosecution's witnesses and the petitioner, the only witness the defense called.

III. Petitioner's 6th [Amendment] right to effective assistance of counsel was denied when appellate counsel failed to ask for a *Ginther* hearing to establish the effectiveness of trial counsel and a *Walker* hearing on direct appeal to determine if the petitioner's confession was voluntary. He claimed that it was obtained through [coercion] by the Detroit Police who promised medical attention only if it was given. Appellate counsel was also ineffective for failing to present the Federal ramifications of issues to the Michigan courts, thereby, subjecting them to exclusion in Federal collateral review.

IV. Petitioner was denied his 6th [Amendment] right to a fair trial when the trial judge ruled out the possibility of the jury reviewing the transcripts of testimony (of the only two eyewitnesses) that they requested. When the court instructed the jury that they were "only" to use their collective recollection to reach a verdict, he effectively estopped the jury's ability to review crucial transcripts of testimony.

The two witnesses, Brown and Ballard, testimonies [sic] were in direct contradiction to each other and that made the transcripts critical to the jury's decision making process.

V.      Petitioner's 14th [Amendment] right to a fair trial was violated when the prosecutor argued facts not on record and appealed to the jury's "civic duty" to convict. Among other things, the prosecutor argued that self defense was a license to kill. He also argued that the jury had an "opportunity to do justice to a family that had lost a life."

VI.     Petitioner, a wheelchair bound individual's, 6th [Amendment] right to a fair trial and 14th [Amendment] right to due process was violated when the court instructed the jury not to consider his handicap when his defense was self-defense, of which the participant's size, strength, weight and physical abilities were elements of the defense and critical factors.

VII.    Petitioner's 14th [Amendment] due process rights were violated when the court incorrectly applied the sentencing guidelines. The offense was committed within one minute of the victim having assaulted the petitioner in his home. Michigan sentencing guidelines provides in OV3 that, if a person is being victimized in a combative situation, and a death occurs, then 10 points should be scored, not 25. The court made a factual determination that [petitioner], in one minute, had time to cool down, thus, he was no longer in a combative situation and awarded 25 points infringing on the jury's duty to make all factual determinations and incorrectly applying the sentencing guidelines.

VIII.   Petitioner's 5th [Amendment] right to remain silent was violated when the court, with the jury present, asked the defense counsel if he had discussed with [petitioner] his right to remain silent. When this was done in front of the jury, it had the potential to effect the petitioner's credibility. Although he took the stand, this question gave the impression that there must have been an incriminating reason why the court thought he should not testify, thereby, damaging petitioner's credibility and affecting his 14th [Amendment] right to due process.

Petition (docket no. 1).

## II.    Procedurally defaulted claims

5

### A.    Procedural default doctrine

Respondent contends that several of petitioner's claims are barred from habeas review under the procedural default doctrine. Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice." *Gray v. Netherland*, 518 U.S. 152, 162 (1996). Not every state procedural rule will warrant application of the procedural default doctrine. Only a procedural rule that was "'firmly established and regularly followed' by the time as of which it [was] to be applied," *Ford v. Georgia*, 498 U.S. 411, 424 (1991), will support application of the doctrine. "For a habeas claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule, but the state court must also have based its decision on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000).

### B.    Procedurally defaulted issues

Here, petitioner first raised issues II, III, IV, V and VIII in his motion for relief from judgment filed in the trial court pursuant to MCR 6.500 *et seq*. Both the Michigan Court of Appeals and the Michigan Supreme Court denied petitioner's application for leave to appeal these claims because he failed to meet the burden of establishing entitlement to relief under MCR 6.508(D). A habeas petitioner's claims are procedurally defaulted in those cases in which the Michigan Supreme

6

Court expressly relies on MCR 6.508(D) in denying an application for leave to appeal.  *See Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Burroughs v. Makowski*, 282 F.3d 410, 414 (6th Cir. 2002); *Simpson*, 238 F.3d at 407-08; *Luberda v. Trippett*, 211 F.3d 1004, 1008 (6th Cir. 2000).  For this reason, petitioner's claims II, IV, V and VIII are  procedurally defaulted.

However, petitioner's issue III, which alleges ineffective assistance of appellate counsel, is not subject to procedural default.  Because state collateral review under MCR 6.500 *et seq.* is the first opportunity for a criminal defendant to address the issue of ineffective assistance of appellate counsel, this issue is not subject to the procedural default doctrine.  *See Whiting v. Burt*, 395 F.3d 602, 614 (6th Cir. 2005);  *Hicks v. Straub*, 377 F.3d 538, 558 n. 17 (6th Cir. 2004); *Tucker v. Renico*, 317  F.Supp.2d  766, 773 (E.D. Mich. 2004).[1]  Accordingly, the court will address the merits of issue III.  *See* § IV. B., *infra*.

### C.     Cause and prejudice

Habeas review of a procedurally defaulted claim is precluded  unless petitioner can

---

[1]  As the Sixth Circuit explained in *Hicks*:

In denying petitioner's motion for relief from judgment, the state trial court decided petitioner's  ineffective-assistance-of-appellate-counsel  claim  against  petitioner-albeit without any reasoning.  Thus, when the Michigan Supreme Court denied petitioner leave to appeal this denial under M.C.R. 6.508(D), it was implicitly invoking only subsection (2) with respect to petitioner's ineffective-assistance-of-appellate-counsel claim.

However, as the district court correctly found, M.C.R. 6.508(D)(2) does not constitute a state procedural ground that is adequate to bar federal habeas review.  28 U.S.C. § 2254(b)(1) prohibits a federal court from granting habeas relief to a state prisoner on a federal claim unless that prisoner has exhausted all available remedies in state court with respect to that claim.  Thus, a federal court may not justly find that a prisoner procedurally defaulted his federal claim simply by virtue of receiving an adverse judgment on that claim while attempting to exhaust it in state court.  Such a doctrinal Catch-22 would effectively foreclose federal habeas relief.

*Hicks*, 377 F.3d at 558 n. 17.

demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that a failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. "[T]he existence of cause for a procedural default must turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Petitioner has failed to set forth cause to overcome the procedural default of these four claims. With respect to Issue II, petitioner's conclusory claim that his appellate counsel caused the procedural default by failing to raise an issue on appeal is insufficient. Ineffective assistance of appellate counsel may constitute cause for excusing a procedural default, *see id.*, but only when the performance of counsel was so deficient that it could not be considered the representation guaranteed by the Sixth Amendment, *see Strickland v. Washington*, 466 U.S. 668 (1984). Unsupported or conclusory allegations of ineffective assistance of counsel fail to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689. *See Fountain v. United States*, 211 F.3d 429, 435 (7th Cir. 2000); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of appellate counsel are not sufficient to warrant habeas relief); *United States v. DiTommaso*, 817 F.2d 201, 215-16 (2nd Cir. 1987); *Campbell v. Greene*, 440 F. Supp.2d 125, 149 (N.D. N.Y. 2006).

With respect to Issues IV, V and VIII, petitioner simply refers the court to arguments he raised in the Michigan state courts. Such vague assertions are insufficient. "Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise cause and prejudice produced." *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006). *See also, Seymour v. Walker*, 224 F.3d

8

542, 551 (6th Cir. 2000) (vague and conclusory assertions cannot suffice to demonstrate cause for

a procedural default).  In the absence of cause, it is unnecessary to consider any prejudice resulting

from this alleged error of federal law.

Petitioner's failure to demonstrate cause prevents federal review of his habeas claims

unless the court's failure to do so will result in a  "fundamental miscarriage of justice." *Coleman*,

501 U.S. at 750.   In *Schlup v. Delo*, 513 U.S. 298, 321 (1995), the Supreme Court described the

scope of the fundamental miscarriage of justice exception:

> To ensure that the fundamental miscarriage of justice exception would remain "rare"
> and would only be applied in the "extraordinary case," while at the same time
> ensuring that the exception would extend relief to those who were truly deserving,
> the Court explicitly tied the miscarriage of justice exception to the petitioner's
> innocence.

To meet the threshold requirement for actual innocence, a petitioner must persuade

the court "that, in light of the new evidence, no juror, acting reasonably, would have voted  to find

him guilty beyond a reasonable doubt."  *Id*. at 329.  *See, e.g. Paffousen v. Grayson*, No. 00-1117,

2000 WL 1888659 at *3 (6th Cir. Dec. 19, 2000)  ("[I]n order to establish actual innocence a

petitioner must show that it is more likely than not that no reasonable juror would have convicted

him").  Evidence sufficient to establish actual innocence "normally consists of exculpatory scientific

evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at

trial." *Paffousen*, 2000 WL 1888659 at *3.  Because petitioner offers no such new evidence that he

is actually innocent of the crimes for which he was convicted, he has failed to meet the fundamental

miscarriage of justice exception.  Accordingly, petitioner's claims II, IV, V and VIII are procedurally

barred and not subject to habeas review.

### III.     Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Before petitioner may seek such relief in federal court, however, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies.  *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A).  Here, petitioner has exhausted all of the issues raised in his petition.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Federal law if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided the case differently than a Supreme Court decision based upon a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Lopez v. Wilson*, 426 F.3d 339, 341 (6th Cir. 2005) (*rehearing en banc*).  An unreasonable application of

clearly established Federal law occurs "when the state court identified the correct legal principle

from the Supreme Court but unreasonably applied the principle to the facts of the case before it." *Id.*

   A determination of a factual issue by a state court is presumed to be correct.  28

U.S.C. § 2254(e)(1).  A habeas petitioner has the burden of rebutting the presumption of correctness

by clear and convincing evidence that the state court's determination was erroneous.  *Magana v.*

*Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001).

  **IV.**   **Petitioner's habeas claims**

  **A.**   **Jury instructions**

  **1.**   **Self defense jury instruction (Issue I)**

   First, petitioner contends that the trial court violated his Fifth, Sixth and Fourteenth

Amendment rights when the trial court issued instructions that did not require the state to prove

every element of the offense.  Petitioner contends that he was in the curtilage of his home, i.e., the

driveway, and that he had no duty to retreat from the victim.  During voir dire, the trial judge advised

the jury that under Michigan's law of self-defense, there is a "duty to retreat."

> Let me go on and fully explain this.  By law, a person must avoid using deadly force if he can do so.  If [petitioner] could have safely retreated but he did not do so, you can consider that fact along with all the other circumstances when you decide whether he went farther in protecting himself than he should have.

> However, if [petitioner] honestly and reasonably believed that it was immediately necessary to use deadly force to protect himself from an imminent threat of death, serious -- or serious injury, the law does not require him to retreat.  He may stand his ground and use the amount of force he believes necessary to protect himself.

Tr. Trans. I at 48.

   Then during the final jury instructions, the  trial judge advised the jurors that

petitioner claimed that he acted in self defense, and gave them the following instruction with respect

to the duty to retreat:

> By law, a person must avoid using deadly force if he can safely do so.  If the defendant could have safely retreated but did not do so, you can consider that fact along with all of the other circumstances when you decide whether he went farther in protecting himself than he should have.

Tr. Trans. IV at 445.

The Michigan Court of Appeals addressed petitioner's claim regarding this alleged erroneous jury instruction as follows:

> [D]efendant argues that the trial court erred by failing to sua sponte instruct the jury on the no-duty-to-retreat rule in accordance with CJI2d 7.17.  We disagree.  Because the facts showed that the victim was shot while defendant was outside his home, on or near his driveway, and there was no evidence that the victim ever entered defendant's home, the no-duty-to-retreat rule did not apply.  *People v. Kulick*, 209 Mich.App 258, 264-265; 530 NW2d 163 (1995), remanded for reconsideration on other grounds 449 Mich. 851 (1995); *People v. Szymarek*, 57 Mich.App 354, 356-357; 225 NW2d 765 (1975); *People v. Godsey*, 54 Mich.App 316, 319-321; 220 NW2d 801 (1974); *People v. Paxton*, 47 Mich.App 144, 147-149; 209 NW2d 251 (1973).

*People v. Richard L. Brown*, No. 219898, slip op. at 1-2.

Federal habeas review is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  "A federal court may not issue the writ on the basis of a perceived error of state law."  *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  The only question arising out of a federal habeas challenge to a state court's jury instruction is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  *Estelle*, 502 U.S. at 72 (internal quotations omitted).  Habeas corpus relief is not warranted on the basis of an improper jury instruction simply because the instruction is undesirable, erroneous or universally condemned.  *Id.*  In addition, the instruction cannot be judged in artificial isolation, but must be considered in the context of the instructions as

a whole and the trial record.  *Id.*

The Michigan Court of Appeals determined that the trial court issued appropriate jury instructions with respect to plaintiff's self-defense claim.  Now, petitioner seeks to have this court overrule the Michigan appellate court's determination that the "do not retreat rule" was inapplicable in this case.  Petitioner's claim is beyond the scope of this federal habeas review.  The state courts are the ultimate expositors of state law in federal habeas proceedings. *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67-68.  As the Sixth Circuit observed in *Roddy v. Black*, 516 F.2d 1383 (6th Cir. 1975):

> The Great Writ is not an instrument which the federal courts may employ at will to reverse state criminal convictions.   Rather it is the means by which federal courts may undo "restraints contrary to our fundamental law, the Constitution. "

*Roddy*, 516 F.2d at 1383, *quoting Fay v. Noia*, 372 U.S. 391, 409 (1963).  To grant the relief sought by plaintiff, to require the additional instruction, would be tantamount to this court overruling the ultimate expositor of the state law.  Accordingly, petitioner's claim regarding the trial court's failure to give a jury instruction that he had "no duty to retreat" is not cognizable on federal habeas review.

### 2.    Instruction regarding petitioner's handicap (Issue VI)

Next, petitioner contends that the trial court violated his constitutional right to a fair trial and due process during voir dire when it instructed the jury not to consider his handicap with respect to the self-defense claim. The Michigan Court of Appeals addressed this issue as follows:

> [D]efendant argues that the court's comments during voir dire, that the jury should not consider his handicap, were inconsistent with the court's final instructions on self-defense, wherein the court told the jury that it should take into account the relative strength of defendant and the victim when deciding if self-defense applied. During voir dire, the court emphasized several times and questioned the jurors about whether they could decide this case without prejudice or sympathy for defendant

13

because of his handicap. We do not believe that the court's instructions were inconsistent. The court's earlier comments were aimed at determining whether the jurors could decide this case without prejudice or sympathy because defendant was handicapped. The court also instructed the jury to decide the case on the evidence and law as instructed. The court did not tell the jury that defendant's handicap could not be considered for any purposes. Accordingly, this issue does not warrant relief.

*People v. Richard L. Brown*, No. 219898, slip op. at 4.

Respondent asserts that petitioner's claim arises from a gross misreading of the record. The court agrees. This instruction occurred during the jury selection process. At this time, the trial court asked prospective jurors whether petitioner's status as a handicapped individual would cause sympathy or prejudice that might affect their ability to be impartial. For example, the court advised the jurors that "Sympathy is in no way, shape or form to be a factor, and the fact that he's handicapped, you're not to be sympathetic to him due to the mere fact that he may be handicapped." Tr. Trans. I at 49. See also, *id.* at 77, 96, 118, 122, 138, 142, 148. Indeed, the court also cautioned the jurors that sympathy for the deceased should not be a factor in the decision. *See, e.g., id.* at 142.

In the final jury instructions, the court instructed the jury regarding the relevance of petitioner's handicap to his self defense claim. First, the court instructed that to act in self-defense, petitioner "must have honestly and reasonably believed that he was in danger of being killed or seriously injured." Tr. Trans. IV at 443. Second, the court instructed that a person may not kill or seriously injure another to protect himself against what seems like a threat of only a minor injury; petitioner "must have been afraid of death or serious physical injury." *Id.* at 443-44. The court went on:

When you decide if [petitioner] was afraid of one or more of these, you should consider all of the circumstances, the condition of the people involved including their relative strength, whether the other person was armed with a dangerous weapon or had some other means of injuring [petitioner], the nature of the other person's attack or threat, whether [petitioner] knew about any previous violent

14

acts or threats made by the other person.

*Id.* at 444.

In his reply brief, petitioner states that his habeas claim is limited to the trial court's instruction given as Trial Trans. I at 49, where the court "instructed the jury not to consider the Petitioner's handicap." Petitioner's Reply at 6. It appears that petitioner is referring to the following instructions:

> Okay. Now, you may, if you don't already, know that the defendant is handicapped. All right. Sympathy is in no way, shape or form to be a factor, and the fact that he's handicapped, you're not to be sympathetic to him due to the mere fact that he may be handicapped . . . .

> Okay. And that's the same -- you're not to be prejudiced, do you understand that? All right. You're not to consider handicaps or any sympathy or penalty. DO you understand that as well?

Trial Trans. I at 49.

The court finds no basis for petitioner's claim that these instructions deprived him of a fair trial. The court's preliminary instructions advised the jury to be neither sympathetic with petitioner due to his handicap, nor prejudiced against him due to the handicap. The final instructions clearly allowed the jurors to consider petitioner's condition and relative strength in evaluating the self-defense claim. Accordingly, this claim should be denied.

### B.    Ineffective assistance of appellate counsel (Issue III)

Next, petitioner contends that his appellate counsel was ineffective (1) for failing to ask for a *Ginther* hearing to establish the effectiveness of trial counsel, (2) for failing to ask for a *Walker* hearing on direct appeal, and (3) for failing to preserve a sentencing guideline issue. Respondent has failed to address any of these issues.

### 1.    Issues raised on appeal

15

These claims arise from trial counsel's failure to suppress statements that petitioner gave to the police and petitioner's claim on appeal that this action constituted ineffective assistance of counsel.  The Michigan Court of Appeals addressed the issue as follows:

> Defendant argues that his attorney was ineffective for not moving to suppress two statements that he gave to the police. In order for this Court to reverse due to ineffective assistance of counsel, defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced him that he was denied the right to a fair trial.  *People v. Pickens*, 446 Mich. 298, 338; 521 NW2d 797 (1994).  Defendant must overcome the presumption that the challenged action might be considered sound trial strategy.  *People v. Tommolino*, 187 Mich.App 14, 17; 466 NW2d 315 (1991).  To establish prejudice, defendant must show that there is a reasonable probability that, but for his counsel's error, the result of the proceeding would have been different.  *People v. Johnnie Johnson, Jr*, 451 Mich. 115, 124; 545 NW2d 637 (1996).  The burden is on defendant to produce factual support for his claim of ineffective assistance of counsel.  *People v. Hoag*, 460 Mich. 1, 6; 594 NW2d 57 (1999).

> Because defendant did not raise this issue in the trial court, our review is limited to the record.  A review of the record fails to reveal any support for defendant's claim that his statements should have been suppressed.  Defendant has not met his burden of showing that defense counsel was ineffective.

*People v. Richard L. Brown*, No. 219898, slip op. at 3.

## 2.    Sixth Amendment standard

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  "[T]he proper standard for attorney performance is that of reasonably effective assistance."  *Strickland,* 466 U.S. at 687.  In *Strickland*, the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*   In making this determination, the court "must judge

the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of

the time of counsel's conduct."  *Id.* at 690.

> To evaluate a claim of ineffective assistance of appellate counsel, we assess the
> strength of the claim appellate counsel failed to raise.  "Counsel's failure to raise an
> issue on appeal could only be ineffective assistance if there is a reasonable
> probability that inclusion of the issue would have changed the result of the appeal."
> *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir.2004).  "If there is a reasonable
> probability that [the defendant] would have prevailed on appeal had the claim been
> raised, we can then consider whether the claim's merit was so compelling that
> appellate counsel's failure to raise it amounted to ineffective assistance of appellate
> counsel." *Id.* at 700.

*Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008).

Appellate counsel enjoys a strong presumption that the alleged ineffective assistance

falls within the wide range of reasonable professional assistance.  *See Willis*, 351 F.3d at 745, *citing*

*Strickland*.  It is not necessary for appellate counsel to raise every non-frivolous claim on direct

appeal.  *Smith v. Murray*, 477 U.S. 527, 536 (1986);  *Jones v. Barnes,* 463 U.S. 745 (1983).  On

the contrary,

> Experienced advocates since time beyond memory have emphasized
> the importance of winnowing out weaker arguments on appeal and
> focusing on one central issue if possible, or at most on a few key
> issues.

*Jones*, 463 U.S. at 751-52.   It is well-recognized that the effect of adding weak arguments to an

appellate brief "will be to dilute the force of the stronger ones."  *Id.* at 752, *quoting* R. Stern,

*Appellate Practice in the United States* 266 (1981).  "[I]f you cannot win on a few major points, the

others are not likely to help, and to attempt to deal with a great many in the limited number of pages

allowed for briefs will mean that none may receive adequate attention."  *Id.*

### 3.      Trial court's opinion

The trial court's April 19, 2004 opinion[2] rejected petitioner's claim of ineffective

assistance of appellate counsel, providing in pertinent part as follows:

---

[2] In the trial court's opinion, petitioner is referred to as "defendant."

Defendant does not attempt to establish the requirement of good cause for failure to raise the current issues in his previous appeal.  On direct appeal, appellate counsel raised ten issues; the Michigan Appeals Court found that there was no prejudicial error against the defendant.  *People v. Richard L. Brown*, Docket Number #219898, November 6, 2001.  Defendant's appellate attorney did in fact raise the issue of ineffective assistance of counsel, which Defendant now asserts, but the court was not persuaded.  Defendant now argues that his appellate attorney should have requested a *Ginther* and a *Walker* hearing.

Under the deferential standard of review, appellate counsel's decision to winnow out weaker arguments in pursuit of those that may be more likely to prevail is not evidence of ineffective assistance of counsel.  *People v. Reed*, *supra* at 391, citing *Jones v. Barnes*, 463 U.S. 745, 752, 103 S Ct. 3308, 3313, 77 L. Ed.2d 987 (1983).  Also, counsel's failure to assert all arguable claims is not sufficient to overcome the presumption that counsel functioned as a reasonable appellate attorney would have in selecting the issues that were presented on appeal.  The issue whether a reasonable appellate attorney could conclude that the issues that were not raised by counsel were not worthy of mention on appeal.  *Id.*  The sole remedy for ineffective assistance of appellate counsel is a new appeal, not an order granting a new trial.  *People v. Oster*, 97 Mich. App. 122; 294 NW2d 253 (1980).   A trial court is not the proper forum for raising that issue.

The defendant has not established that a reasonable attorney would have requested a *Ginther* and *Walker* hearing, even after presenting the issue to the court for review.  If the appellate court found that either a *Ginther* hearing or a *Walker* hearing was necessary, the court could have remanded the case to the trial court to conduct such hearing.  Instead, the appellate court decided the issues against the defendant, based on the briefs.

*People v. Richard L. Brown*, No. 98-9284 (April 19, 2004).

### 4.    *Ginther* hearing

"In *People v. Ginther*, 390 Mich. 436, 212 N.W.2d 922, 925 (1973), the Supreme Court of Michigan held that a criminal defendant should move for a new trial and seek to make a separate factual record in the trial court if the trial record does not cover the claims he wishes to raise on appeal."  *Hargrave-Thomas v. Yukins*, 374 F.3d 383, 388 (6th Cir. 2004).  The purpose of a *Ginther* hearing is to allow the trial court to hear witnesses and make factual determinations, which, in turn, allows the appellate court to determine the adequacy of trial counsel from the facts on the record.  *See People v. Tubisz*, No. 214498, 2000 WL 33407201 at *2 (Mich. App. Sept. 1, 2000); *People v. Nelson*, No. 174618, 1997 WL 33349382 at *1 (Mich. App. May 30, 1997).  "If the record made before a defendant is convicted does not factually support claims he wishes to urge on appeal,

he should move in the trial court for a new trial or, where the conviction is on a plea of guilty, to set aside the plea, and seek to make a separate record factually supporting the claims." *Ginther*, 390 Mich. at 443.  *See People v. Moore*, 129 Mich. App. 354, 358, 341 N.W.2d 149 (1983) ("[t]o the extent that a defendant's ineffective-assistance-of-counsel claim depends on facts not of record, it is incumbent upon him to make an evidentiary record at the trial court level in connection with a motion for a new trial").

Pursuant to *Ginther*, the Michigan Court of Appeals "will not review a claim of ineffective assistance of counsel based on allegations not supported by the record when no motion for a new trial or for an evidentiary hearing has been made and where a timely motion for a remand has not been filed with this Court." *Id.*  However, in the absence of a *Ginther* hearing, the Michigan Court of Appeals will review an ineffective assistance of counsel claim based on the facts that are apparent on the record. *See, e.g., People v. Stewart*, 219 Mich. App. 38, 42, 555 N.W.2d 715 (1996).

As previously discussed, the trial court determined that petitioner failed to establish that a reasonable attorney would have requested a *Ginther* hearing.  A *Ginther* hearing, of course, is not always required.  In this instance, for example, appellate counsel asserted that a *Ginther* hearing was not necessary, because the relevant facts appeared in the trial record itself.   Both of these conclusions appear supported by the record.   The issue concerned the circumstances surrounding petitioner's statement.  Petitioner testified that he was not allowed to have medical attention until he made a statement to the police and that he only answered questions because "certain promises" were made to him.   Amended Brief at 22-24; Trial Trans. III at 313, 367.  In addition, Officer Falk, to whom petitioner made the statement, provided testimony regarding the circumstances in which petitioner gave his statement. Trial Trans. II at 142-80.  For these reasons, appellate counsel was not deficient for relying on the trial record to raise the ineffective assistance of trial counsel.

### 5.     *Walker* hearing

" A *Walker* hearing is a hearing held in the Michigan state courts, outside the presence

of the jury, to determine whether a confession was voluntarily made. *See People v. Walker*, 374 Mich. 331, 132 N.W.2d 87 (1965)." *Machacek v. Hofbauer*, 213 F.3d 947, 951 at n.3 (6th Cir. 2000). Petitioner's appellate counsel raised this issue on appeal, asserting that trial counsel was ineffective for failing to move for a *Walker* hearing.   Appellant's Amended Brief at 22 (docket no. 21). Accordingly, petitioner's claim of ineffective assistance of appellate counsel for failing to ask for a *Walker* hearing fails.

> **6.     Appellate counsel failed to present federal ramifications to the Michigan courts to allow federal collateral review.**

Petitioner cryptically mentions another alleged act of ineffective assistance of appellate counsel, stating

> Counsel also inhibited defendant's ability to present a challenge to the scoring of OV3 by failing to follow the MCR requirements to present the issue.  This prohibited the court from reviewing the claim that would have reduced the length of the defendant's sentence.

Petitioner's Memorandum at 33.  Petitioner presents no additional facts, arguments, explanations or legal authority to support this conclusory ineffective assistance claim.  Unsupported assertions  are insufficient to demonstrate ineffective assistance of appellate counsel.  *See generally,  Fountain*, 211 F.3d at 435; *Workman*, 178 F.3d at 771; *DiTommaso*, 817 F.2d at 215-16; *Campbell*, 440 F. Supp.2d at 149.   Accordingly, this claim of ineffective assistance of appellate counsel also fails.

> **C.     Trial court incorrectly applied Michigan's sentencing  guidelines (Issue VII)**

> **1.     Background**

Next, petitioner contends that his Fourteenth Amendment rights were violated when the trial court incorrectly applied Michigan's sentencing guidelines.  Specifically, petitioner contends that the trial court assigned 25 points, rather than 10 points, for an offense variable, OV3.  Petitioner asserts that under the 1998 sentencing guidelines,[3] he should have received 10 points for OV3,

---

[3] Because petitioner committed this offense in 1998, Michigan's judicial sentencing guidelines apply. Michigan's legislative guidelines apply to offenses committed on or after January 1, 1999.  *See People v. Reynolds*, 240 Mich. App. 250, 253, 611 N.W.2d 316 (2000).

because this lower score is appropriate "where a killing is intentional within the definition of murder second degree or voluntary manslaughter but the death occurred in a combative situation or in victimization of the offender by the deceased." Petitioner's Memo. at 46. At sentencing, the trial court observed that it could score OV3 at 10 points if the homicide was committed in an "extreme emotional state caused by an adequate provocation and before a reasonable amount of time had elapsed for the offender to calm or gross negligence amounting to an unreasonable disregard for life." Sent. Trans. at 475-76 (docket no. 20). The court also observed that the OV3 description for scoring 25 points was "the precise definition of Second Degree Murder as contained in the jury instructions." *Id.* at 477. Ultimately, the trial court scored OV3 at 25 points because "[b]ased upon the testimony . . . there was adequate time for cooling off here. The fight had concluded." *Id.* at 479-80.

### 2.    Trial court's application of sentencing guidelines

Petitioner's claim does not present an issue cognizable under § 2254. Federal habeas corpus relief does not lie for errors of state law, which includes the state's computation of petitioner's prison term. *See Kipen v. Renico*, No. 02-1742, 2003 WL 21130033 at *1 (6th Cir. May 14, 2003), citing *Estelle*, 502 U.S. at 68. *See also Austin v. Jackson,* 213 F.3d 298, 300 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief). "As long as the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining 'the type and extent of punishment for convicted defendants.'" *Austin*, 213 F.3d at 301, *quoting Williams v. New York*, 337 U.S. 241, 245 (1949).

Petitioner's characterization of the state trial court's application of the sentencing guidelines as a denial of due process does not transform his state law claim into a federal constitutional claim. *See, e.g., Austin*, 213 F.3d at 301(in rejecting petitioner's claim that the trial court's departure from the sentencing guidelines violated his federal due process rights during sentencing, the court noted that petitioner failed "to articulate the grounds upon which the trial court's departure from the Michigan Sentencing guidelines violates any federal due process right he

possesses," and was "unable to substantiate a single violation of any of his constitutional guarantees to due process"); *Felicetty v. Bianco*, No. Civ. A. 02-585-JJF, 2003 WL 21402544 at *6 (D. Del. June 10, 2003) (observing that a state court's sentencing decision is generally not constitutionally cognizable, even if the claim is couched in terms of a due process violation).

To the extent that petitioner contends that his sentence violates the "doctrine of proportionality," this claim also fails. "Federal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Because petitioner's sentence was neither a death penalty nor life in prison without possibility of parole, he is not entitled to federal habeas relief on this proportionality claim.

**3.**     ***Blakely* issue**

Finally, petitioner raised new legal arguments in his post-appellate filings, in which he contends that his sentence violates the rule set forth by in *Blakely v. Washington*, 542 U.S. 296 (2004). *Blakely* involved the State of Washington's determinate sentencing system, which allowed a trial judge to elevate the maximum sentence permitted by law on the basis of facts not found by the jury but by the judge. Applying the Washington mandatory sentencing guidelines, the trial judge found facts that increased the maximum sentence faced by the defendant. The Supreme Court held that this scheme offended the Sixth Amendment, because any fact that increases or enhances a penalty for the crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt. *Blakely*, 542 U.S. at 301 (*citing Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).

As an initial matter, *Blakely* does not apply retroactively to this habeas action because the Supreme Court decided that case long after petitioner's conviction was affirmed on direct appeal. *See Lang v. United States*, 474 F.3d 348, 353 (6th Cir.2007); *Humphress v. United States*, 398 F.3d 855, 860-62 (6th Cir.2005). *See also, In re Dean*, 375 F.3d 1287, 1290 (11th Cir. 2004) (observing that "[n]o court has yet determined whether *Blakely* created a new rule of constitutional law made

retroactive to cases on collateral review" and that "[r]egardless of whether *Blakely* established a 'new rule of constitutional law' . . . the Supreme Court has not declared *Blakely* to be retroactive to cases on collateral review").

Even if *Blakely* was retroactive, it is inapplicable to petitioner's sentence. Petitioner's sentence of 12 to 25 years was well within the maximum possible sentence in this case. The crime of second-degree murder carried a punishment of "imprisonment in the state prison for life, or any term of years." M.C.L. § 750.317. As a second habitual offender, the court could have sentenced petitioner to imprisonment "for life or for a lesser term." M.C.L. § 760.10. Relying on *Blakely*, petitioner claims that the sentencing guidelines range was enhanced by the scoring of offense variables on the basis of facts not proven to a jury beyond a reasonable doubt.

Petitioner's claim is without merit. Unlike the State of Washington's determinate sentencing system, the State of Michigan has an indeterminate sentencing system in which the defendant is given a sentence with a minimum and a maximum term. The maximum sentence is not determined by the trial judge, but is set by law. *See People v. Drohan*, 475 Mich. 140, 160, 715 N.W.2d 778 (2006) (*citing* M.C.L. § 769.8). Only the minimum sentence is based on the applicable sentencing guideline range. *Id.*; *and see People v. Babcock*, 469 Mich. 247, 255 n. 7, 666 N.W.2d 231 (2003) (*citing* M.C.L. § 769.34(2)). Therefore, under Michigan law, the trial judge sets the minimum sentence (within a certain range), but can never exceed the maximum sentence. *Drohan*, 475 Mich. at 160. Because the trial court can never exceed the maximum sentence set by statute, Michigan's indeterminate sentencing scheme, unlike the determinate sentencing scheme at issue in *Blakely*, does not infringe on the province of the finder of fact, and, thus, does not violate *Blakely*. *See Blakely*, 542 U.S. at 304-05, 308-09; *Lipsey v. Bell*, 1:08-cv-60, 2008 WL 1836953 at *4 (W.D. Mich. April 22, 2008) (listing cases).

## V.    Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.

Dated: February 11, 2009        <u>    /s/ Hugh W. Brenneman, Jr.    </u>
                                            Hugh W. Brenneman, Jr.
                                            U.S. Magistrate Judge

ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within eleven (11) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).